UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME W. DEWALD,

      Plaintiff,

v.

HILLARY CLINTON, United States
Secretary of State; KATHLEEN SEBELIUS,
United States Secretary of Health and Human
Services; ISMAEL AHMED, Secretary of the
Michigan Department of Human Services;
DAVE MORK, Director of the
Michigan State Disbursement Unit;
BETTY LOWENTHAL, Referee of the
6th Circuit Michigan Friend of the Court; and
HONORABLE ELIZABETH PEZZETTI, Judge of
the Michigan 6the Circuit Family Court,

      Defendants.
_____/

Case No. 09-13117
Honorable Patrick J. Duggan

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

On August 6, 2009, Plaintiff Jerome W. Dewald ("Plaintiff") initiated this pro se

action against Defendants alleging that his constitutional and civil rights were violated

when his passport was seized pursuant to 42 U.S.C. § 652(k).  Plaintiff is seeking

declaratory, injunctive, compensatory and punitive relief against the following

Defendants, who he has sued in their individual and official capacities: United States

Department of State Secretary Hillary Clinton ("Secretary Clinton") and United States

Secretary of Health and Human Services Secretary Kathleen Sebelius ("Secretary

Sebelius") (collectively "Federal Defendants"); Director of the Michigan Department of

Human Services Ismael Ahmed ("Director Ahmed") and Director of the Michigan State Disbursement Unit Dave Mork ("Director Mork") (collectively "State Defendants"); and Michigan Sixth Circuit Family Court Judge Elizabeth Pezzetti ("Judge Pezzetti") and Sixth Circuit Friend of the Court Referee Betty Lowenthal ("Referee Lowenthal") (collectively "County Defendants").

Presently before the Court are the following motions to dismiss Plaintiff's first amended complaint, filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6): (1) the County Defendants' motion; (2) the State Defendants' motion; and (3) the Federal Defendants' motion. Plaintiff has filed a response to each motion. On May 27, 2010, this Court issued a notice informing the parties that it is dispensing with oral argument with respect to Defendants' motions pursuant to Eastern District of Michigan Local Rule 7.1(f). The Court is now ready to rule on the motions.

## I.     STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) seeks to dismiss a complaint for lack of proper subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Proper jurisdiction is a requirement in determining the validity of a claim, and as such, Rule 12(b)(1) motions must be considered by a court prior to any other challenges. *See Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 776 (1946). Motions to dismiss for lack of proper subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Richie*, 15 F.3d 592, 598 (6th Cir.

1994). A facial attack challenges the sufficiency of the pleading itself. *Id.* During a facial attack the court must treat all material allegations in the complaint as true and construe the allegations in the light most favorable to the non-moving party. *Id.* A factual attack, on the other hand, challenges the factual existence of subject matter jurisdiction. *Id.* "On such a motion, no presumptive of truthfulness applies to the factual allegations . . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests whether a legally sufficient claim has been pleaded in a complaint, and provides for dismissal when a plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, – U.S. – , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1974 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). This plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

When assessing whether a plaintiff has set forth a "plausible" claim, the district court must accept all of the complaint's factual allegations as true. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). Even so, "the pleading must contain more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. at 1965. A plaintiff has the duty to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.* Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, – U.S. – , 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).

Compared to formal pleadings drafted by lawyers, a generally less stringent standard is applied when construing the allegations pleaded in a pro se complaint. *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 596 (1972). Even so, pro se plaintiffs must still provide more than bare assertions of legal conclusions. *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

According to Plaintiff's amended complaint, he and his ex-wife were married and subsequently divorced in Russia.  They have two minor children resulting from the marriage who Plaintiff claims his ex-wife removed to the United States without his permission in August 2006.  (Am. Compl. ¶ 11.)

Some time after moving to the United States, Plaintiff's ex-wife initiated child custody and support proceedings in the Michigan Sixth Circuit Family Court.  The proceedings were assigned to Judge Pezzetti.  Plaintiff alleges that he has lived in Moscow, Russia, during the majority of the state court proceedings.  (*Id.* ¶ 7.) Nevertheless, when Plaintiff's ex-wife initiated the proceedings, she falsely certified to the court that she was unaware of Plaintiff's current address but that his last known address was in Ingham County, Michigan.  (*Id.* ¶ 2.)

As a result of his ex-wife's misrepresentations, Plaintiff was served a summons for the child support and custody proceeding by posting and publication pursuant to Michigan Court Rules 2.105(I)(2) and 2.106.[1]  (*Id.* ¶ 9.)  Plaintiff alleges that he had no knowledge of the posting and publication, and therefore had no opportunity to defend against his ex-wife's allegations and request for support.

On February 29, 2008, Judge Pezzetti entered a default judgment against Plaintiff in the state court proceedings which *inter alia* required Plaintiff to make monthly child

---

[1]Michigan Court Rule 2.105(I) grants the courts discretion to allow alternative service upon a defendant where "process cannot be served under th[e] rule . . ."  Rule 2.106 governs service of process by the alternative method of posting and publication.  MCR 2.106.

support payments of $825.  (*Id.* ¶ 8.)  Unaware of the judgment, Plaintiff failed to satisfy his obligations.  (*Id.* ¶ 10.)  As a result, by mid-May 2009, Plaintiff was 13 months past due on his child support payments, owing more than $10,000, and the Michigan Office of Child Support had certified the fact of the arrearage to the United States Department of Human Services ("HHS") pursuant to 42 U.S.C. § 654.  (*Id.* ¶¶ 8, 10.)  In turn, on June 22, 2009, when Plaintiff went to the United States Embassy in Moscow to apply for additional passport pages, embassy officials seized his passport pursuant to 42 U.S.C. § 652(k).  (*Id.* ¶¶ 5, 15.)

42 U.S.C. § 654 "requires each state to establish a procedure for certifying to HHS the states' determination that individuals are more than $5,000 in arrears on child support payments . . . ."  *Weinstein v. Albright*, 261 F.3d 127, 133 (2nd Cir. 2001) (citing 42 U.S.C. § 654(31)(a)).  Section 654 further requires that each state's procedures "ensure that 'each individual [obligor] concerned is afforded notice of such determination and the consequences thereof, and an opportunity to contest the determination.'"  *Id.* (quoting 42 U.S.C. § 654(31)(a)).  42 U.S.C. § 652 requires that when the Secretary of HHS receives certification from the director of a state's department of human services that an individual owes child support arrears in excess of $5,000, the Secretary of HHS must transmit such certification to the United States Secretary of State for action with respect to denial, revocation, or limitation of that individual's passport.[2]  *Id.* (citing 42 U.S.C. § 652(k)).

---

[2]Section 652(k) provides in part that "[t]he Secretary of State shall, upon certification by the Secretary [of HHS] . . . refuse to issue a passport to such individual, and may revoke, restrict, or

(continued...)

On July 15, 2009, after discovering the February 2008 default judgment against him in the Michigan court, Plaintiff filed a motion for relief from the judgment in the state court, arguing that service had been fraudulently obtained and therefore the child support, custody and parenting time orders entered by the family court were void for lack of personal jurisdiction. (*Id.* ¶ 27.) The motion was heard before Judge Pezzetti on July 22 and August 5 and 12, 2009. (*Id.* ¶ 27 n.2.) In the interim, on August 7, 2009, Plaintiff filed his initial complaint against Defendants in this Court seeking *inter alia* an order requiring Defendants to return his passport to him.

On August 12, 2009, Judge Pezzetti granted Plaintiff's motion for relief from the default judgment and set aside the child support arrearage and the custody and parenting time orders. In response, on or about August 14, 2009, the State Department returned Plaintiff's passport to him.[3] (Pl.'s Mot. to Am. Compl. ¶ 2; Fed. Defs.' Mot. Ex. 3 ¶¶ 10-12.) Plaintiff thereafter moved to file an amended complaint in this action to reflect the changed circumstances and to clarify his legal claims. (Doc. 20.) The Court granted Plaintiff's motion on March 4, 2010. (Doc. 33.)

Plaintiff alleges in his amended complaint that, while the setting aside of the default judgment addressed some of the relief sought in his initial complaint, Judge Pezzetti refused to declare the default judgment "void" and also failed to set aside the

---

[2](...continued)
limit a passport issued previously to such individual."

[3]By that time, Plaintiff's visa, which was affixed to his passport, had expired. (Am. Compl. ¶ 15.)

child support portion of the order.[4] (Am. Compl. ¶ 34.) Thus Plaintiff contends that he continues to be at risk of having his passport revoked. (*Id.* ¶ 41.)

In fact, Plaintiff alleges that even after the default judgment was set aside, the Michigan Disbursement Unit continued to assess child support at the rate set forth in Judge Pezzetti's February 29, 2008 order.[5] (*Id.* ¶ 39.) The Michigan Disbursement Unit also continued to send arrearage notices to Plaintiff at a post office box in Michigan, despite the fact that Plaintiff's actual address in Russia now was reflected in the state court file. (*Id.* ¶ 40.) As a result, when Plaintiff returned to the United States in December 2009, he discovered that the Michigan Disbursement Unit now reflected that he owed child support in excess of $2,500. However, according to the March 19, 2010 affidavit of Oakland County Friend of the Court Suzanne Hollyer, Plaintiff has not had any child support arrears reflected in the Michigan Child Support Enforcement System since December 22, 2009. (State Defs.' Mot. Ex. A ¶ 7.)

As alleged in his amended complaint, Plaintiff names Defendants in this action based on their following involvement in the process resulting in the revocation of his passport. Plaintiff alleges that Judge Pezzetti entered the default judgment against him

---

[4] Plaintiff indicates in his amended complaint that he has moved in the state court to rectify the failure to set aside the child support order but when Judge Pezzetti learned of Plaintiff's federal lawsuit, she recused herself from the case. (Am. Compl. ¶ 35.) The case was reassigned to another judge, but that judge has refused to hear any of Plaintiff's motions pending an appeal that Plaintiff filed in the Michigan Court of Appeals. (*Id.* ¶ 37.)

[5] On August 22, 2009, Plaintiff and his ex-wife negotiated a new settlement agreement with respect to child support which requires Plaintiff to pay support to his ex-wife directly. (*Id.* ¶ 38.)

after allowing alternative service of process pursuant to Michigan Court Rules 2.106 and 2.105(I)(2).  (*Id.* ¶ 51.)  Plaintiff also alleges that Judge Pezzetti delayed the decision on Plaintiff's motion for relief from judgment until Plaintiff's passport expired.  (*Id.* ¶ 52.) According to the amended complaint, the family court proceedings were assigned to Referee Lowenthal, whose office certified to the Michigan Disbursement Unit that Plaintiff was more than $2,500 in child support arrears.

The Michigan Disbursement Unit is the state agency responsible for collecting child support pursuant to a state court child support order and it operates the automated system that calculates arrears and triggers certification to the United States Department of Health and Human Services pursuant to 42 U.S.C. § 654 that an individual owes child support in excess of $2,500.  *See supra* at 6. Director Mork is the Director of the Michigan Disbursement Unit.  (*Id.* at 9.)  Director Ahmed is the Director of the Michigan Department of Health and Human Services ("DHS"), which, *inter alia,* transmits the actual certification to HHS when an individual owes child support payments in excess of $2,500, and certifies that a proper procedure is in place to ensure "notice and opportunity" as required under 42 U.S.C. § 654(31)(A).  (*Id.* ¶ 48.)  Secretary Sebelius, *inter alia*, determines policy and oversees the administration of HHS, including the certification to other federal agencies that individuals have accumulated child support arrearages.  (*Id.* ¶ 47.)  Secretary of State Clinton, *inter alia*, controls the restriction, limitation, and revocation of United States passports, including the denial, revocation, or limitation of

passports pursuant to 42 U.S.C. § 652(k) for individuals owing child support arrearages in excess of $2,500.

Plaintiff alleges in his amended complaint that, under the statutes and regulations carried out by Defendants, his passport again is in danger of being revoked without due process of law in violation of his constitutional and civil rights. (*Id.* ¶¶ 46-53.) He further contends that 42 U.S.C. §§ 652(k) and 654(4)(A) and Michigan Court Rules 2.105(I)(2) and 2.106 violate his First, Fifth, Eighth, and Fourteenth Amendment rights. He therefore asks the Court to declare these federal and state provisions unconstitutional. Plaintiff further asks the Court to enjoin Defendants from engaging in conduct that puts his passport in jeopardy of being revoked. Finally, Plaintiff seeks damages for Defendants conduct that led to the revocation of his passport in the first instance.

## III.    Defendants' Arguments in Their Motions To Dismiss

In support of their motion to dismiss Plaintiff's amended complaint, the County Defendants (Judge Pezzetti and Referee Lowenthal) first assert that the Court lacks subject matter jurisdiction pursuant to the Rooker-Feldman doctrine.[6] The County Defendants alternatively argue that Eleventh Amendment immunity and/or judicial immunity shield them from Plaintiff's claims. The County Defendants also assert in support of their motion that Plaintiff fails to state a claim upon which relief may be

---

[6]Pursuant to the Rooker-Feldman doctrine, federal district courts are divested of subject matter jurisdiction to review state court judgments. *See generally Rooker v. Fid. Trust Co.*, 263 U.S. 413, 55 S. Ct. 149 (1923); *Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983).

granted, that they were not properly served, and that the Court should decline to exercise jurisdiction pursuant to the "domestic relations" exception to federal court jurisdiction.

The State Defendants (Directors Mork and Ahmed) argue in support of their motion to dismiss that the Court lacks proper subject matter jurisdiction as a result of Eleventh Amendment immunity. The State Defendants also argue that Plaintiff has no actual case or controversy subject to judicial review and that he fails to state a claim upon which relief may be granted.

The Federal Defendants (Secretaries Clinton and Sebelius) assert several reasons why they believe Plaintiff's claims against them must be dismissed. First, they argue that sovereign immunity bars Plaintiff's claims against them in their official capacities. Second, to the extent that Plaintiff advances claims under 42 U.S.C. § 1983, the Federal Defendants contend that they acted under the color of federal law and not state law, as required under § 1983. Third, the Federal Defendants argue that Plaintiff fails to state a claim upon which relief may be granted against them in their individual capacities under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971). Fourth, the Federal Defendants contend that Plaintiff's constitutional challenges to 42 U.S.C. § 652 are moot. But even if his challenges are not moot, the Federal Defendants contend that they fail on their merits.

The Court will address only those arguments necessary to resolve Defendants' motions.

**IV. Analysis**

    **A. Eleventh Amendment Immunity and Plaintiff's claims for monetary damages against the State Defendants and County Defendants**

The Eleventh Amendment to the United States Constitution states that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any Foreign State." U.S. CONST. amend XI. As such, without a state's consent to be sued, the Eleventh Amendment bars any civil action in federal court against one of the states by its own citizens, citizens of other states, or citizens of other countries. *Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504 (1980); *Missouri v. Fiske*, 290 U.S. 18, 54 S. Ct. 18 (1933). As the Sixth Circuit has held: "A state is sovereign within the structure of the federal system, and 'it is inherent in the nature of sovereignty not to be amendable to the suit of an individual without its consent.'" *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002) (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 1122 (1996)).

The Eleventh Amendment prohibition "specifically prohibits federal courts from entertaining suits brought directly against the states or its agencies." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143, 113 S. Ct. 684, 687-88 (1993); *Abick v. State of Michigan*, 803 F.2d 874, 876 (6th Cir. 1986); *Shoultes v. Szekely*, 654 F. Supp 966, 967 (W.D. Mich. 1987). Case law indicates that courts constitute agencies of the state and therefore are entitled to share in a state's sovereign

immunity.  *See Mumford v. Basinski*, 105 F.3d 264, 269-70 (6th Cir. 1997).  Thus, "in absence of consent, a suit in which the State or one of its agencies . . . is named as a defendant is prohibited by the Eleventh Amendment."  *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 907 (1984).  A state's consent to suit must be "unequivocally expressed."  *Id*. at 99, 104 S. Ct. at 907.

Eleventh Amendment immunity extends equally to suits against state officials sued for monetary damages based on their conduct in their official capacities because such lawsuits are not suits against the officials themselves but in fact are suits against the office of the officials, i.e. against the state itself.  *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989)).  In *Kentucky v. Graham*, 473 U.S. 159, 105 S. Ct. 3099 (1985), the Supreme Court explained the distinction between personal- and official-capacity suits as follows:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. . . . Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." . . . As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Id*. at 165-66, 105 S. Ct. at 3105 (quoting *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55, 98 S. Ct. 2018, 2035, n.55 (1978)) (additional citations omitted).  Explaining further in a subsequent case, the Supreme Court provided: "[T]he phrase

'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991). Thus in an official-capacity suit, federal court rules provide that when the official sued dies or leaves office, his or her successor automatically assumes the role of defendant in the litigation. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991) (citations omitted). "'[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.'" *Id.*, 112 S. Ct. at 362 (quoting *Graham*, 473 U.S. at 166, 105 S. Ct. at 3105).

Here, Plaintiff attempts to sue the County Defendants and State Defendants in their individual *and* official capacities for money damages. Specifically, Plaintiff alleges that Judge Pezzetti acted outside the scope of the law in granting service by posting and publication in Oakland County, Michigan, and that Referee Lowenthal acted as a knowing and willful accomplice to Judge Pezzetti's actions. (Pl.'s Resp. to County Defs.' Mot. at 10.) With respect to Directors Ahmed and Mork, Plaintiff does not allege that either defendant had any contact with Plaintiff's case, nor does he allege that either defendant made any decision(s) regarding his case. Instead, Plaintiff merely asserts that the State Defendants are complicit in violating his constitutional and civil rights because "it is common knowledge to these state actors that civil rights violations and constitutional violations regularly occur in the application of the state laws leading to passport revocation or seizure under federal law . . ." (Pl.'s Answer to State Defs.' Mot. To Dismiss at 2-3.)

Plaintiff's allegations fail to assert liability against Directors Ahmed or Mork based on *their* "actions under color of state law." Instead, Plaintiff states claims against these defendants in their official capacities, only. Neither Congress nor the State of Michigan have waived Eleventh Amendment immunity for suits brought under § 1983. *See Kentucky v. Graham*, 473 U.S. at 169 n.17, 105 S. Ct. at 3107 n. 17 (citations omitted); *McCoy v. Michigan*, 369 F. App'x 646 (6th Cir. 2010). As such, Plaintiff's claims for monetary damages against the State Defendants in reality are claims against the state itself and therefore are barred by the Eleventh Amendment.

Plaintiff, in contrast, does state claims against the County Defendants individually. Nevertheless, there is an alternative reason why the County Defendants are immune from suit. It is well established that judges are absolutely immune from liability for any damages caused by the acts they commit within their judicial discretion. *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997) (citing cases). Courts in the Sixth Circuit have concluded that this immunity extends to referees, such as Referee Lowenthal. *See, e.g., McGhan v. Kalkaska County Dep't of Human Servs.*, No. 1:08-cv-1113, 2009 WL 2170151, at *12 (W.D. Mich. July 20, 2009) (citing cases).

"A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority,' nor 'if his exercise of authority is flawed by the commission of grave procedural errors.'" *Barnes*, 105 F.3d at 1115 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S. Ct. 1099, 1105-06 (1978)). Immunity only is lost where the judge was not acting in his or her judicial capacity or where the actions were taken in the

complete absence of all jurisdiction.[7]  *Id.* at 1116 (citing *Mireles v. Waco*, 502 U.S. 9, 11-12, 112

S. Ct. 286, 288 (1991)).  Neither exception to immunity applies in this case and therefore the

Court concludes that the County Defendants are entitled to judicial immunity with respect to

Plaintiff's claims against them for monetary damages.[8]

---

[7]In *Winchell*, the Sixth Circuit summarized the analysis for determining whether a judge
was acting in his or her judicial capacity:

> Whether an act is judicial depends on the "nature" and "function" of the act,
> not the "act" itself. *Mireles*, 502 U.S. at 13, 112 S. Ct. at 288 (quoting
> *Stump*, 435 U.S. at 362, 98 S. Ct. at 1107-08). Typically, this functional
> analysis turns on two factors: (1) looking to the nature of the act itself,
> whether the act is a "function normally performed by a judge"; and (2)
> regarding the expectations of the parties, whether the parties "dealt with the
> judge in his judicial capacity." *Id.* at 12, 112 S. Ct. at 288 (quoting *Stump*,
> 435 U.S. at 362, 98 S.Ct. at 1107). Yet "if only the particular act in
> question were to be scrutinized," then the *Stump* formulation would broadly
> envelop "any mistake of a judge in excess of his authority," thereby
> undermining the purposes behind absolute judicial immunity. *Id.*
> Recognizing this concern, the *Mireles* Court reformulated the relevant
> inquiry: even if a particular act is not a function normally performed by a
> judge, we are directed to "look to the particular act's relation to a general
> function normally performed by a judge." *Id.* at 13, 112 S. Ct. at 288-89.

*Winchell*, 105 F.3d at 1116.

[8]The *Rooker-Feldman* doctrine also bars Plaintiff's claim for monetary damages based on the
County Defendants' alleged misconduct as that conduct consists of Judge Pezzetti's and Referee
Lowenthal's decisions in the state court domestic relations case.  The *Rooker-Feldman* doctrine
bars the Court from reviewing the County Defendants' judicial decisions in the domestic relations
case, even if Plaintiff alleges that those decisions were unconstitutional.  *See Feldman*,
460 U.S. at 486, 103 S. Ct. at 1317.  The doctrine extends to any claim inextricably intertwined
with the state court's judgment.  *Loriz v. Connaughton*, 233 F. App'x 469, 474 (6th Cir. 2007)
(citing *Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 390 (6th Cir. 2002)).

For the above reasons, the Court holds that the County Defendants and State Defendants are entitled to immunity with respect to Plaintiff's claims against them for money damages.[9]

## B.      Federal Sovereign Immunity

Sovereign immunity generally bars suits against the United States or its agencies, whether brought by a private party or by a state. *Block v. North Dakota*, 461 U.S. 273, 280, 103 S. Ct. 1811, 1816 (1983). The doctrine of sovereign immunity also extends to suits for money damages against officers and agents of the United States in their official capacities. *Blakey v. United States*, 276 F.3d 853, 870 (6th Cir. 2002) (citations omitted). Under sovereign immunity principles, the United States may be sued only if and to the extent that it consents. *United States v. Dalm*, 494 U.S. 596, 608, 110 S. Ct. 1361, 1368 (1990). "'[T]he terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Id*. (quoting *United States v. Testan*, 424 U.S. 392, 399, 96 S. Ct. 948, 953 (1976)). Any waiver of the sovereign's immunity must be "unequivocally expressed" and will be "construed strictly in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092, 206 (1996).

The Supreme Court, however, has identified exceptions to the doctrine of sovereign immunity. In particular, one of the well-established exceptions limits application of the doctrine in declaratory and/or injunctive suits against federal entities or officials seeking to enjoin the enforcement of an unconstitutional statute. *Dugan v. Rank*, 372 U.S. 609, 621-22, 83 S. Ct. 999, 1006-07 (1963); *Malone v. Bowdoin*, 369 U.S. 643, 647-48, 82 S. Ct. 980, 983-84 (1962);

---

[9] Neither Eleventh Amendment immunity nor judicial immunity bar Plaintiff's claims for prospective injunctive relief against the State Defendants or County Defendants. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14, 103 S. Ct. 2890, 2899 (1983) (citing *Ex Parte Young*, 209 U.S. 123, 160-62, 28 S. Ct 441, 454-455 (1908)); *Pulliam v. Allen*, 466 U.S. 522, 541-42, 104 S. Ct. 1970, 1981 (1984).

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-90, 69 S. Ct. 1457, 1461 (1949). As the Court noted in *Larson*, the doctrine does not apply in such cases because "the conduct against which specific relief is sought is beyond the officer's power and is, therefore, not the conduct of the sovereign." 337 U.S. at 690, 69 S. Ct. at 1462.

In his amended complaint, Plaintiff alleges that 42 U.S.C. §§ 652 and 654 are unconstitutional in that enforcement of these statutes deprive him of his rights under the First, Fifth, Eighth, and Fourteenth Amendments. (*See, e.g.* Am. Compl. ¶ 75.) The Court therefore finds the above exception to sovereign immunity applicable to Plaintiff's claims for declaratory and injunctive relief against the Federal Defendants.

Moreover, sovereign immunity does not bar Plaintiff's claims against the Federal Defendants to the extent Plaintiff is suing these defendants in their individual capacities for violations of his constitutional rights. *See Ecclesiastical Order of the ISM of Am., Inc. v. Chasin*, 845 F.2d 113, 116 (6th Cir. 1988) (citing *Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264 (1979) and *Bivens*, 403 U.S. 388, 91 S. Ct. 1999). To state a cause of action against the Federal Defendants in their individual capacities, however, Plaintiff must allege and show that each defendant acted under color of federal law and was personally involved in the alleged constitutional violations.[10] *Mueller v. Gallina*, 137 F. App'x 847, 850 (6th Cir. 2005) (citations omitted).

Plaintiff offers no factual basis in his amended complaint for finding Secretary Clinton or Secretary Sebelius personally involved in the decision to revoke his passport or any other alleged

---

[10]The Federal Defendants correctly argue that Plaintiff cannot state a claim against them pursuant to 42 U.S.C. § 1983. To demonstrate a § 1983 claim, the plaintiff must allege and show that the defendant acted "under color of *state* law." 42 U.S.C. § 1983.

unconstitutional act. Instead, Plaintiff makes only the speculative conclusion that the Federal

Defendants violated his civil and constitutional rights due to the very nature of their respective

positions. (Am. Compl. ¶¶ 46-47.) Thus the Court finds that Plaintiff's claims against the

Federal Defendants in their individual capacities are barred for failure to state a claim upon

which relief may be granted.[11]

### C.     Plaintiff's Request for Injunctive Relief

As noted earlier, the Eleventh Amendment does not bar Plaintiff's suit for prospective

(i.e. injunctive or declaratory) relief against the County Defendants or the State Defendants. *See

Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14, 103 S. Ct. 2890, 2899 n.14 (1983) (citing *Ex

Parte Young*, 209 U.S. 123, 160-62, 28 S. Ct 441, 454-455 (1908)); *Pulliam v. Allen*, 466 U.S.

522, 541-42, 104 S. Ct. 1970, 1981 (1984). Federal courts may "enjoin state officials to conform

future conduct to the requirements of federal law." *Rose D. v. Swift*, 310 F.3d 230, 234 (1st Cir.

2002). Similarly, as discussed *supra*, sovereign immunity does not bar suits to enjoin the federal

government from engaging in alleged unconstitutional conduct. *Dugan v. Rank*, 372 U.S. 609,

621-22, 83 S. Ct. 999, 1006-07 (1963); *Malone v. Bowdoin*, 369 U.S. 643, 647-48, 82 S. Ct. 980,

983-84 (1962); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-90, 69 S. Ct.

1457 (1949).

"'In order to obtain either a preliminary or permanent injunction, [a party] must

demonstrate that failure to issue the injunction is likely to result in irreparable harm.'" *United

---

[11]Notably, 42 U.S.C. § 652(k)(3) provides statutory immunity to Secretary Clinton and Secretary Sebelius for the alleged harm caused by Michigan's certification of Plaintiff's arrearage. This provision states, in relevant part: "The Secretary [of HHS] and the Secretary of State shall not be liable to an individual for any action with respect to a certification by a State agency under this section."

*States v. Miami Univ.*, 294 F.3d 797, 816 (6th Cir. 2002) (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1068 (6th Cir. 1998)).  Furthermore, the moving party must demonstrate "that there is no other adequate remedy at law." *Id.*; *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798, 1803 (1982) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.") (citations omitted).

In his amended complaint, Plaintiff is asking the Court to enjoin the following conduct:

91.   Defendants from acting to deny, revoke or restrict [his] passport during the pendancy [sic] of these proceedings.

92.   any Michigan Court from allowing alternate service without holding a hearing.

93.   the Michigan Department of Human Services from using child support enforcement provisions under Title IV-D in cases where the custodial parent does not receive Title IV-D benefits.

94.   the Department of State from enforcing provisions of 42 USC [§] 652(k) against US citizens residing outside the United States and holders of existing passports without a predeprivation administrative hearing.

95.   the U.S. Department of Health and Human Services from certifying to the U.S. State Department under 42 USC [§] 654(31)(A) any individual owing child support under a default judgment in Michigan obtained under MCR 2.105(I)(2) without a hearing.

96.   the Michigan Department of Human Services and the Michigan State Disbursement Unit from certifying to the US Department of Health and Human [S]ervices that any person subject to a default judgment for child support obtained under MCR 2.105(I)(2) without a hearing has been afforded his rights under 42 USC [§] 654(31)(A).

97.   the Oakland County Michigan Friend for the Court from certifying to the Michigan Department of Human Services under 42 USC [§] 654(31)(A) any individual owing delinquent child support under a judgment where service was obtained under MCR 2.105(I)(2) without a hearing.

Such injunctive relief is not available to Plaintiff.

First, adequate remedies at law exist. Plaintiff can appeal to the Michigan Court of Appeals any decision rendered by the Oakland County Circuit Court where alternative service under Michigan Court Rules 2.105 and 2.106 is employed or where he otherwise believes that his rights have been violated. *See* MCR 7.203. In fact, Plaintiff did just that. (Am. Compl. ¶ 34.) As Plaintiff also did, he can challenge an alleged unconstitutional act of the state or federal actors by filing suit in the federal court.

Second, Plaintiff cannot demonstrate the existence of irreparable harm if his request for relief is not granted. At this time, the child support order obtained without notice to Plaintiff has been set aside, Plaintiff's passport has been returned to him, and the Michigan Child Support Enforcement System has not reflected child support arrears for Plaintiff since late December 2009. *See supra*. Plaintiff only alleges that his passport *may* be seized again in the future. Such a possibility is purely contingent upon Plaintiff's neglect of his child support obligations or the unlikely reoccurrence that he will not receive notice of future state court child support proceedings. In short, Plaintiff's amended complaint merely contemplates future potential harm that could theoretically occur.

As a result, Plaintiff's request for injunctive relief does not present an actual case or controversy sufficient to invoke judicial review by the federal courts as required under Article III of the United States Constitution. U.S. Const. art. III, § 2.; *O'Shea v. Littleton*, 414 U.S. 488, 493, 94 S. Ct. 669, 675 (1974) (internal quotation marks and citation omitted) ("Plaintiffs in the federal courts must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction.") To invoke the federal court's

jurisdiction, "[i]t must be alleged that the plaintiff has sustained or is *immediately in danger* of sustaining some direct injury as the result of the challenge statute or official conduct . . . The injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Littleton*, 414 U.S. at 494, 94 S. Ct. 675 (internal quotation marks and citations omitted) (emphasis added). An actual case or controversy must exist at all stages of review and not just when the complaint is initially filed. *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S. Ct. 2330, 2334 (1975). Thus, while a case or controversy may have existed when Plaintiff first filed this lawsuit, the subsequent setting aside of the state court child support order, removal of his child support arrears, and return of his passport, rendered his request for injunctive relief not ripe (i.e. moot) and therefore not appropriate for federal judicial review. *See Alvarez v. Smith*, – U.S. – , 130 S. Ct. 576, 580 (2009).

One exception to the mootness doctrine arises where the challenged action is "capable of repetition, yet evading review." *See Thomas Sysco Food Servs. v. Martin*, 983 F.2d 60, 62 (6th Cir. 1993). This exception "is limited to a situation where: (1) the challenged action is too short to be fully litigated prior to its cessation or expiration; *and* (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (emphasis added).

Plaintiff appears to argue that the chain of events that led to the revocation of his passport and the revocation of his passport demonstrate a reasonable probability that the alleged violation will reoccur. (*See, e.g.*, Pl.'s Resp. to Fed. Defs.' Mot. at 3.) This Court cannot agree and finds the likelihood of repetition highly remote. Further, nothing about the circumstances of the challenged conduct suggest that a repeat violation will evade judicial review. That is, if Plaintiff

is wrongly certified to be in child support arrears pursuant to 42 U.S.C. § 652(k)'s statutory threshold at some point in the future and the revocation of his passport thus is again threatened, he can seek relief in the federal courts. Until that time, however, the Court is not presented with a live case or controversy.

## V.     Conclusion

For the reasons set forth above, the Court concludes that the Eleventh Amendment affords the State Defendants immunity from Plaintiff's claims against them in their official capacities and that Plaintiff fails to state a claim against these defendants in their individual capacities. The Court finds the County Defendants immune from Plaintiff's claims for damages against them in their official and individual capacities pursuant to the doctrine of judicial immunity. While judicial immunity does not shield the County Defendants from Plaintiff's claims for injunctive relief, such claims are moot.

Finally, sovereign immunity bars Plaintiff's request for monetary damages against the Federal Defendants to the extent they are sued in their official capacities. This doctrine, however, does not shield the Federal Defendants from Plaintiff's claims for injunctive relief or to the extent they are sued in their individual capacities for allegedly violating Plaintiff's constitutional rights. Nevertheless, Plaintiff fails to state a claim against the Federal Defendants in their individual capacities and his claims for injunctive relief are moot.

Accordingly,

**IT IS ORDERED**, that Defendants' motions to dismiss (Docs. 34, 41, and 48) are **GRANTED**.

DATE: September 13, 2010                          s/PATRICK J. DUGGAN

UNITED STATES DISTRICT JUDGE

Copies to:
Jerome W. Dewald
c/o Amy Bailey
2211 Association Drive
Suite 600
Okemos, MI 48864

Theresa M. Urbanic, Esq.
Jonathan S. Ludwig, Esq.
Joseph E. Potchen, Esq.
Keith J. Lerminiaux, Esq.
William G. Pierson, Esq.